UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 5/8/2020

---

TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
PENSION FUND, WELFARE FUND,
ANNUITY FUND, AND
APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND
INDUSTRY FUND; TRUSTEES OF THE
NEW YORK CITY CARPENTERS RELIEF
AND CHARITY FUND; CARPENTER
CONTRACTOR ALLIANCE OF
METROPOLITAN NEW YORK; and NEW
YORK CITY DISTRICT COUNCIL OF
CARPENTERS,

        Petitioners,

v.

TRIANGLE ENTERPRISE NYC, INC.,

        Respondent.

No. 20-CV-793

MEMORANDUM OPINION
& ORDER

---

RONNIE ABRAMS, United States District Judge:

Petitioners seek confirmation of an arbitration award entered against Respondent Triangle Enterprise NYC, Inc. Respondent did not oppose the petition. For the reasons set forth below, the petition is granted, but with a reduction in the amount of attorneys' fees awarded to Petitioners.

## BACKGROUND

Petitioners in this action consist of several parties. First, collectively referred to as the "Funds," are: (1) Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund, trustees of multiemployer labor-management trust funds organized and operated

in accordance with the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(21); (2) Trustees of the New York City District Council of Carpenters Relief and Charity Fund, a charitable organization established under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3); and (3) Carpenter Contractor Alliance of Metropolitan New York, a not-for-profit corporation incorporated and with its principal place of business in New York. Also among Petitioners is the New York City District Council of Carpenters ("Union"), a labor organization representing employees in an industry affecting commerce within the meaning of Section 501 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 142.  The Union is the certified bargaining representative for certain employees of Respondent.  Respondent is a business corporation incorporated and with its principal place of business in New York.

Respondent serves as a contractor for the New York City School Construction Authority (the "SCA").  Pet. ¶¶ 9-10.  The SCA executed two Project Labor Agreements ("PLAs") – for the periods from 2009–2014 and 2014–2019, *see* Dkt. 11, Ex. B, D – both of which Respondent was bound to, *see* Dkt. 11, Ex. A.  Pet. ¶ 10.  The PLAs required Respondent "to pay timely contributions on behalf of all employees covered by this Agreement to those established jointly trusteed employee benefit funds designated in Schedule A."  Dkt. 11, Ex. B, art. 11; Dkt. 11, Ex. D, art. 11.

The PLAs also bound Respondent to two collective bargaining agreements (the "CBAs"), "to the extent such terms [in the CBAs] did not conflict with the PLA."  Pet. ¶ 12; *see also* Dkt. 11, Ex. B, art. 2; Dkt. 11, Ex. D, art. 2.  As relevant here, Respondent was bound to the Building Construction Agreement (the "BCA Agreement"), Dkt. 11, Ex. F, and the Association Agreement between the Hoisting & Scaffolding Trade Association, Inc. and the Union (the "Association CBA"), Dkt. 11, Ex. G.  *See* Pet. ¶¶ 16, 21.  Like the PLAs, the CBAs required

2

Respondent "to remit contributions to the Funds for every hour worked by its employees within the trade and geographical jurisdiction of the Union."  Pet. ¶ 23; *see also* Dkt. 11, Ex. F, art. XVI; Dkt. 11, Ex. G, art. IX.

Furthermore, pursuant to the CBAs, Respondent was required to furnish its books and payroll records for auditing to ensure compliance with its Fund contributions.  Should "any dispute or disagreement . . . between the parties hereto . . . concerning any claim aris[e] from payments to the Fund of principal and/or interest which is allegedly due," either party could initiate arbitration. Pet. ¶¶ 24-25; Dkt. 11, Ex. F, art. XVI; Dkt. 11, Ex. G, art. IX.  The CBAs provide that "the arbitrator shall have full and complete authority to decide any and all issues" and "shall be empowered to award such interest, liquidated damages, and/or costs as may be applicable under the Agreement and Declaration of Trust establishing such Fund(s)."  Dkt. 11, Ex. F, art. XVI; Dkt. 11, Ex. G, art. IX.  Finally, in the event an arbitration or lawsuit regarding unpaid contributions is filed, the CBAs also provide that the Funds shall be entitled to collect – in addition to the unpaid contributions – (1) "interest on the unpaid contribution determined at the prime rate of Citibank plus 2%," (2) "an amount equal to the greater of (a) the amount of the interest charges on the unpaid contributions as determined above, or (b) liquidated damages of 20% of the amount of the unpaid contributions," (3) "reasonable attorney's fees and costs of the action," and (4) "such other legal or equitable relief as the court deems appropriate."  Dkt. 11, Ex. F, art. XVI; Dkt. 11, Ex. G, art. IX.

Pursuant to the above described agreements, Petitioners audited Respondent's contributions to the Funds from August 7, 2014 through September 17, 2017.  *See* Pet. ¶ 29.  The auditor concluded that Respondent had failed to remit $303,510.83, *see id*. ¶¶ 30-31, and

Petitioners subsequently initiated arbitration proceedings, *id*. ¶ 32; *see also* Dkt. 13, Ex. A (Notice of Arbitration Hearing).[1]

On September 28, 2019, the arbitrator issued an award in favor of Petitioners.  *Id.*  The arbitrator first noted that Respondent's Principal "appeared at the [arbitration] hearing" on September 12, 2019 and "stated that he did not contest the findings of the audit[.]"  Dkt. 1, Ex. K.  He then concluded that, "[u]pon substantial and credible evidence, . . . the Respondent-Employer, Triangle Enterprise NYC Inc., is delinquent in Fringe Benefit monies due under its written agreement and is also obligated to pay delinquency assessment and interest on its delinquency," in addition to attorney's fees and other costs.  *Id.*  In conclusion, he found that Respondent owed $303,510.83 in principal payments; $56,415.51 in total interest; $60,702.17 in liquidated damages; $31,797.69 in non-audit late payment interest; $522.20 in promotional fund contributions; $400 in court costs; $1,500 in attorney's fees; $500 in arbitrator's fees; and $20,651.50 in audit costs.  *Id*.  The final arbitration award for Petitioners was $475,999.90, "with interest to accrue at the annual rate of 7.5% from the date of the award."  *Id*.

As of January 29, 2020, Respondent had paid $173,319.42 of the award.  Pet. ¶ 36. Therefore, $300,680.48 remains due.  On January 29, 2020, Petitioners filed this petition, seeking an order confirming the award and a judgment in the amount of $300,680.48, plus prejudgment interest from the date of the award through the date of judgment accruing at a rate of 7.5%, postjudgment interest at the statutory rate, $2,084.50 in attorneys' fees, and $70 in costs.  *See* Dkt. 1.  Respondents did not oppose their petition.

---

[1] Petitioners initially filed the incorrect "Notice of Hearing" with its petition to confirm arbitration, *see* Dkt. 13, but submitted the correct document on March 11, 2020, *see* Dkt. 13, Ex. A.

## STANDARD OF REVIEW

"Because arbitration awards are not self-enforcing, they must be given force and effect by being converted to judicial orders by courts." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) (alteration and internal quotation marks omitted).  Confirming an arbitration award is generally no more than "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 132 (2d Cir. 2015) (internal quotation marks omitted); *see also* 9 U.S.C. § 9 ("[T]he court must grant such an order unless the award is vacated, modified, or corrected.").  Because "[a]rbitration panel determinations are generally accorded great deference under the FAA," a "court is required to enforce the arbitration award as long as there is a barely colorable justification for the outcome reached." *Leeward Constr. Co. v. Am. Univ. of Antigua–Coll. of Med.*, 826 F.3d 634, 638 (2d Cir. 2016) (alteration and internal quotation marks omitted). "'[T]here is no general requirement that arbitrators explain the reasons for their award.'" *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992).

An unanswered petition to confirm an arbitration award is treated as an unopposed motion for summary judgment. *See D.H. Blair & Co.*, 462 F.3d at 109-10.  Summary judgment is appropriate where the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Thus, even though Respondent has "cho[sen] the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001).

**DISCUSSION**

Petitioners argue that they are entitled to confirmation of the arbitration award, pre- and postjudgment interest, attorneys' fees, and costs.  The Court agrees, but with a reduction in the requested attorneys' fees.

**A. Confirmation of the Arbitration Award**

Petitioners have demonstrated that there is no material issue of fact in dispute to preclude enforcing the arbitration award.  First, Petitioners have presented undisputed evidence that arbitration was appropriate in this case.  In relevant part, the CBAs provide:

> Should any dispute or disagreement arise between the parties hereto, or between the Union and any Employer-member signatory hereto, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder . . . .

Dkt. 11, Ex. F, art. XVI; Dkt. 11, Ex. G, art. IX.  Here, the parties' dispute stemmed from Respondent's alleged failure to remit contributions to the Funds as required by the CBAs.  *See* Pet. ¶ 30.  The CBAs' arbitration provisions, therefore, plainly encompass their present dispute.

Second, the arbitrator indisputably acted within the scope of his authority.  The CBAs provide that "[t]he arbitrator shall have full and complete authority to decide any and all issues raised by the submission and to fashion an appropriate remedy including, but not limited to, monetary damages."  Dkt. 11, Ex. F, art. XVI; Dkt. 11, Ex. G, art. IX.  The permissible forms of relief are also outlined in the CBAs.  In addition to the unpaid contributions, an arbitrator may grant, among other things, interest, a delinquency assessment, liquidated damages, attorneys' fees, and costs.  *Id*.  The CBAs further provide that "[t]he decision of the arbitrator shall be final and binding upon both parties" and "shall be wholly enforceable in any court of competent jurisdiction."  *Id*.

Here, Petitioners submitted evidence that they gave Respondent notice of the arbitration hearing. *See* Dkt. 13, Ex. A. The Respondent's Principal even appeared at the hearing. *See* Dkt. 1, Ex. K. The other evidence submitted confirms that the arbitrator complied with the authority provided to him in the CBAs by limiting his review to the issues raised by Petitioners – namely, Respondent's delinquent payments to the fringe benefit funds from August 7, 2014 through September 17, 2017. *See* Dkt. 1, Ex. K. As stated in the arbitrator's opinion, he heard testimony from the auditor, which set forth the "the accounting method employed during the course of the audit and the computation of the amount of each alleged delinquency," as well as "[t]he [s]ummary [r]eport of the audit." Dkt. 1, Ex. K. Nothing before this Court suggests that the amount is incorrect, or that the auditor's accounting methods were unsound. And, as the arbitrator noted, the Respondent's Principal "did not contest the findings of the audit." *Id.* Moreover, the arbitrator granted relief to Petitioners that was within his authority. As discussed above, the CBAs explicitly permit the arbitrator, in the instance where contributions are disputed, to grant interest, liquidated damages, attorney's fees, arbitrator's fees, and court and audit costs. *See* Dkt. 11, Ex. F, art. XVI; Dkt. 11, Ex. G, art. IX.

In light of the evidence submitted, Petitioners have met their burden of "demonstrating that no material fact remains for trial." *D.H. Blair & Co.*, 462 F.3d at 110. Accordingly, the Court confirms the arbitration award.

**B. Pre- & Post-Judgment Interest**

Petitioners first request prejudgment interest, accruing "from the date of the Award through the date of judgment . . . at the annual rate of 7.5%." Pet. at 9. "[W]hether to award prejudgment interest in cases arising under federal law has in the absence of a statutory directive been placed in the sound discretion of the district courts." *Waterside Ocean Navigation Co. v.*

7

*Int'l Navigation Ltd.*, 737 F.2d 150, 153-54 (2d Cir. 1984) (quoting *Lodges 743 & 1746, Int'l Ass'n of Machinists v. United Aircraft Corp.*, 534 F.2d 422, 446 (2d Cir. 1975)) (explaining that there is a presumption towards granting prejudgment interest).  As such, district courts in this circuit have regularly exercised their discretion to grant prejudgment interest "when confirming arbitration awards under collective bargaining agreements pursuant to § 301 of the LMRA, when the CBAs indicated that an arbitration award was 'final and binding.'"  *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Modular Sys. Installations, Inc.*, No. 17-CV-6467 (GHW), 2017 WL 4772427, at *4 (S.D.N.Y. Oct. 20, 2017) (quoting *Serv. Emps. Int'l Union, Local 32BJ, AFL-CIO v. Stone Park Assocs.*, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004) (collecting cases)).  "Determining the rate of interest to be applied is also within the discretion of the district court."  *Stone Park Assocs.*, 326 F. Supp. 2d at 555 (noting that "the LMRA is silent with respect to a prejudgment interest rate").

Petitioners' request for prejudgment interest from the date of the award through the date of judgment in this action, at a rate of 7.5% annually, is granted.  Although "the LMRA is silent with respect to a prejudgment interest rate, the 'common practice' among courts within the Second Circuit is to grant interest at a rate of 9%."  *Stone Park Assocs.*, 326 F. Supp. 2d at 555; *see, e.g.*, *N.Y.C. Dist. Council of Carpenters v. Tried N True Interiors LLC*, No. 20-CV-00051 (LGS), 2020 WL 1809323, at *4 (S.D.N.Y. Apr. 9, 2020) (granting prejudgment interest at the rate of 9% after confirming an arbitration award).  Moreover, the arbitrator has already awarded this interest.  *See* Dkt. 1, Ex. K.  Because there is a presumption towards granting prejudgment interest and Petitioners have requested an accrual rate lower than the general practice in this circuit, the Court grants their request for prejudgment interest from the date of the award through the date of judgment in this action at a rate of 7.5%.  *See Trs. of N.Y.C. Dist. Council of*

*Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Tried N True Interiors LLC*, No. 19-CV-2083 (GHW), 2019 WL 2327524, at *3 (S.D.N.Y. May 31, 2019) (granting prejudgment interest at the rate of 7% after confirming an arbitration award).

Petitioners also seek "post-judgment interest at a statutory rate." Pet. at 9.  28 U.S.C. § 1961(a) mandates postjudgment interest "on awards in civil cases as of the date judgment is entered." *N.Y.C. Dist. Council of Carpenters*, 2020 WL 1809323, at *4.  The Court, therefore, also grants postjudgment interest to "be calculated from the date of the entry of the judgment." 28 U.S.C. § 1961(a).

## C. Attorneys' Fees & Costs

Finally, Petitioners seek $2,084.50 in attorneys' fees and $70 in costs incurred in bringing this petition.  *See* Pet. at 9.  Without statutory authority, a prevailing party is not generally entitled to attorneys' fees, and Section 301 of the LMRA does not specifically provide for recovery of attorney's fees in actions to confirm an arbitration award.  *See Int'l Chem. Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985); *Dist. Council of N.Y.C. & Vicinity of United Bhd. of Carpenters & Joiners of Am. V. Infinity Mgmt. Corp.*, No. 19-CV-10654 (GHW), 2020 WL 550699, at *3 (S.D.N.Y. Feb. 3, 2020). However, pursuant to "its inherent powers to supervise and control its own proceedings, a district court has the authority to award attorney's fees to the prevailing party when the losing party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Eisemann v. Greene*, 204 F.3d 393, 395 (2d Cir. 2000) (quoting *F.D. Rich Co. v. U.S. ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)).  In the context of a petition to confirm an arbitration award, "a court may award attorneys' fees and costs when a party refuses to comply with an enforceable arbitration

decision without justification." *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338, Affiliated with the Retail, Wholesale & Dep't Store Union, AFL-CIO*, 118 F.3d 892, 896 (2d Cir. 1997) (alteration and internal quotation marks omitted).

Here, Respondent has not complied with the arbitration award.  Although it has paid $173,319.42 toward the award, $300,680.48 remains due and outstanding.  *See* Pet. ¶ 36.  And by not opposing this petition, Respondent has offered no justification for its failure to comply with the award.  The Court thus grants Petitioners' request for attorneys' fees arising from bringing this action to confirm the arbitration award.  *See Paysafe Partners LP v. Merch. Payment Grp. LLC*, No. 19-CV-495 (LGS), 2019 WL 1986607, at *3 (S.D.N.Y. May 6, 2019) ("As Respondent has not appeared in this action nor challenged the Award, Petitioner is entitled to reasonable attorneys' fees and costs.").

To determine a reasonable amount of attorneys' fees, Petitioners' counsel submitted contemporaneous time records, reflecting the time spent and activities performed in litigating this matter.  *See* Pet. ¶¶ 40-45; Dkt. 1, Ex. L.  In total, counsel billed $2,084.50, reflecting 7.7 hours of work.  *See* Pet. ¶ 45.  Specifically, counsel billed the time of (1) Nicole Marimon, a partner, who graduated from law school in 2014, at a rate of $275 per hour in 2019 and $350 per hour in 2020, *id*. ¶ 41; (2) Adrianna Grancio, an associate, who graduated from law school in 2016, at a rate of $275 per hour, *id*. ¶ 42; and (3) legal assistants, at a rate of $120 per hour, *id*. ¶ 43.  *See* Dkt. 1, Ex. L.  With respect to the amount of hours billed, the Court has examined the submitted invoice and finds that the hours expended were reasonable.  *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. Metroplex Serv. Grp., Inc.*, No. 18-CV-5889 (PAE), 2018 WL 4141034, at *6 (S.D.N.Y. Aug. 30, 2018) (explaining that an

invoice "reflects sound billing practices" when "[i]t is thorough, detailed, relevant, and easy to understand, with no evident duplication of effort").

The Court, however, will marginally reduce counsel's proposed billing rates.  Within the last year, Ms. Marimon sought and was awarded fees at the rate of $275 per hour in this district. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Skyeco Grp. LLC*, No. 19-CV-7608 (LGS), 2019 WL 6497533, at *3 (S.D.N.Y. Dec. 3, 2019) (awarding attorney's fees to Ms. Marimon at a rate of $275 per hour rate).  The Court, therefore, finds Ms. Marimon's request for fees at a rate of $275 per hour for work completed in 2019 on this matter to be reasonable. Regarding the work she performed in 2020, however, a rate of $300 per hour – rather than the requested $350 per hour – is more appropriate here.  A rate of $300 per hour is generally considered reasonable for partners litigating petitions to confirm an arbitration award in this district.  *See Trs. of N.E. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Cooperation Funds v. Excel Installations*, No. 19-CV-3012, 2020 WL 429135, at *5 (E.D.N.Y. Jan. 27, 2020) (granting Ms. Marimon's request for attorney's fees at a rate of $300 per hour); *see also Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, et al. v. Earth Const. Corp.*, No. 19-CV-5411 (ALC), 2020 WL 614740, at *3 (S.D.N.Y. Feb. 10, 2020) (noting that a billing rate of $300 per hour for a partner is deemed reasonable in this district).  In addition, Ms. Marimon was requesting a rate of $275 per hour for work performed only two to three months earlier.

The Court also declines to approve Ms. Grancio's requested rate of $275 per hour.  Other courts in this district have "recently found these rates unreasonable, and concluded that $225 per hour was an appropriate rate" for associates with similarly limited experience.  *Trs. of N.Y.C.*

11

*Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Metro. Exposition Servs., Inc.*, No. 19-CV-149 (AJN), 2019 WL 2004279, at *4 (S.D.N.Y. May 7, 2019) (concluding that $225 per hour, rather than $275 per hour, is the appropriate rate for associates); *see also Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. DV I, LLC*, No. 17-CV-7367 (PAE), 2018 WL 461244, at *5 (S.D.N.Y. Jan. 18, 2018) (holding that $225 per hour is the appropriate rate for an associate who is "similarly situated [to other] associates"); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. AMP&G Constr., LLC*, No. 17-CV-4729 (DAB), 2018 WL 1883450, at *4 (S.D.N.Y. Mar. 29, 2018) (same).

Finally, the Court finds the requested rate of $120 per hour for the work performed by legal assistants to be reasonable. Numerous courts in this district have deemed this rate to be reasonable. *See, e.g.*, *Skyeco Grp. LLC*, 2019 WL 6497533, at *3 (awarding fees to legal assistant at a rate of $120 per hour); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. M&B Builders Grp. Inc.*, No. 18-CV-5074 (GHW), 2018 WL 6067229, at *6 (S.D.N.Y. Nov. 19, 2018) (same).

Accordingly, Petitioners' request for attorneys' fees is granted, but at the reduced rate of $300 per hour for Ms. Marimon's work in 2020 and $225 per hour for Ms. Grancio's work. Petitioners' are therefore entitled to $1,764.50 in attorneys' fees. The Court also grants Petitioners $70 in costs arising out of this petition's filing, which is a standard cost for bringing actions in this district. *See Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Jessica Rose Enters. Corp.*, No. 15-CV-9040 (RA), 2016 WL 6952345, at *5 (S.D.N.Y. Nov. 28, 2016).

## CONCLUSION

For the foregoing reasons, the petition to confirm the arbitration award is granted.  The Clerk of Court is respectfully directed to enter judgment in the amount of $300,680.48, plus prejudgment interest calculated at a rate of 7.5% per annum from September 28, 2019 through the date of judgment in this action and postjudgment interest.  In addition, Petitioners' request for attorneys' fees and costs in the amount of $1,764.50 and $70, respectively, is granted.  The Clerk of Court is respectfully directed to close this case.

SO ORDERED.


Dated:    May 8, 2020
          New York, New York

_____
Ronnie Abrams
United States District Judge

13